NATIONAL CASUALTY CO. *et al. v.* HALLAM, RECEIVER.

(Division A.   Jan. 4, 1932.)

[138 So. 572.   No. 29600.]

Robertson & Campbell, of Jackson, for appellant.

**Franklin, Easterling & Rosenthal,** of Jackson, for appellee.

Ethridge, P. J., delivered the opinion of the court.

On February 27, 1930, L. C. Hallam, receiver for Mississippi Life & Casualty Insurance Company, exhibited an original bill of complaint in the chancery court of Hinds county, Mississippi, against L. C. Cadenhead and the National Casualty Company, surety on his fidelity

bond written by the National Casualty Company in favor of the Mississippi Life & Casualty Insurance Company guaranteeing the fidelity of Cadenhead as the fiscal agent of the company to sell stock of the said insurance company to prospective buyers, and also on another bond in the sum of one thousand dollars in the same company, commonly known as a "Blue Sky" bond, and also against A. J. Oubre, as principal, and the National Casualty Company, as surety, on a fidelity bond in the sum of twenty-five thousand dollars, guaranteeing the fidelity of Oubre as treasurer of the insurance company.

The bill alleged that the Mississippi Life & Casualty Insurance Company, which had been placed in the hands of a receiver for liquidation, had been organized under the law of the state of Mississippi, and that Cadenhead had been employed as its fiscal agent under written contract; that the defendant Oubre had been elected treasurer of the said insurance company and was at the same time cashier of the Bank of Kemper at Scooba, Mississippi, which bank was designated as one of the depositories of the said insurance company. It was further alleged that the fiscal agency contract was executed between the said insurance company and L. C. Cadenhead, and that by a secret arrangement between Cadenhead and Oubre, the treasurer of the company, a partnership was entered into between Oubre and Cadenhead without the knowledge of the officers or directors of the Mississippi Life & Casualty Insurance Company. The fidelity bond in each case was conditioned against loss by acts of fraud, dishonesty, forgery, theft, wrongful abstractions, misapplication, misappropriation, or any other dishonest or criminal act of commission. The bill alleged that Cadenhead, contrary to his contract, and in violation of the permit granted by the insurance commissioner requiring twenty per cent of the subscription to be paid in cash, had sold forty-three thousand five hundred dollars worth of stock to various parties and had accepted promissory

notes for the first payment instead of having said payments made in cash, and had collected commissions on the said sales to the amount of five thousand four hundred thirty-seven dollars and fifty cents. The bill further alleged that the defendant Oubre connived and colluded with Cadenhead in the collection of said commissions, and that the same constituted a breach of both the bonds of Cadenhead and of Oubre. It was further alleged that in July, 1929, Cadenhead, as fiscal agent, fraudulently, dishonestly, and wrongfully pretended to sell to L. C. Cadenhead, trustee, sixteen hundred shares of stock in the said insurance company for forty thousand dollars, and that he gave his check for six thousand dollars as a payment on this subscription at a time when he had no funds in the bank on which the check was drawn to cover the same, but that defendant Oubre, who was the cashier of the bank on which the check was drawn, which was a depository of the insurance company, held it for thirty days and credited the account of the insurance company on the books of the bank with a deposit of six thousand dollars. It was further alleged that twenty per cent cash required to be collected on said subscription would amount to eight thousand dollars, and that Cadenhead and Oubre wrongfully, dishonestly, and fraudulently abstracted from the funds of said insurance company on deposit with said bank the sum of five thousand dollars as commission on said sale. That the said Oubre had full knowledge of the transaction and should have refused to permit Cadenhead to withdraw the said five thousand dollars commission, which Oubre had authority, by virtue of his office as treasurer, to do, and that the same constituted a fraud on the insurance company and a breach of both bonds.

It was further alleged that later Oubre debited the account of the insurance company with the bank of Kemper with this six thousand dollars, but did not demand a return of the five thousand dollars commission, and that the same has never been returned to the insurance com-

pany. That both Cadenhead and Oubre knew that they had no authority to cancel a subscription, and that the delivery of the six thousand dollars and the taking of the five thousand dollars commission was a fraudulent misappropriation and misapplication of said funds and a breach of the bonds.

It appears that the arrangement between Cadenhead and the insurance company, under his contract as fiscal agent, was that Cadenhead was to receive twelve and one-half per cent of the amount of the subscription at the time the subscription was taken; that he was to have a total of fifteen per cent, but that two and one-half per cent of the first premium was to be paid into the treasury of the company and there remain until the full amount of the subscription had been paid.

An exhibit to the bill, showing various parties to whom stock was sold and notes taken for the initial premium payment required to be in cash, but in fact taken by note, is set out. This list is marked Exhibit 7, and the total shares of stock sold in this method was one thousand seven hundred forty, the amount of the subscription forty-three thousand five hundred dollars, the amount to be paid in cash as initial payment, but which in fact was paid by note, was eight thousand eight hundred dollars, and the amount actually collected as commissions from this amount, instead of being twelve and one-half per cent of the amount of the initial payment, amounted to a total of five thousand four hundred thirty-seven dollars and fifty cents. Generally, these payments were the commission on the entire subscription due Cadenhead under the twelve and one-half per cent arrangement, and not twelve and one-half per cent of the initial payment.

It appears that Oubre was cashier of the bank of Kemper and was under bond to that bank in the amount of twenty thousand dollars with the United States Fidelity & Guaranty Company, as surety, and the amount of this bond at the time suit was filed had been collected and paid

to the state banking department, that bank at the time being in liquidation as an insolvent institution. It further appears that Oubre had been cashier of the bank of Kemper for many years, and the bank had been insolvent for a number of years, and that Oubre had converted or abstracted or made way with the funds of said bank in large sums exceeding the capital and surplus of the bank. It appears in the proof that Cadenhead took notes and sent them through his bookkeeper to Oubre, and that they were discounted by Oubre, purporting to act for the bank, and Cadenhead's commission credited to him on the books of the bank, and the balance was credited to the insurance company's account on the books; that Oubre did not in fact issue a check as treasurer of the insurance company to Cadenhead, but, acting as cashier of the bank, issued or made out deposit certificates. At the time the bank was taken over for liquidation by the banking department the insurance company had on the books of the bank an account amounting to more than eleven thousand dollars. After the bank had been in liquidation, a fifty per cent dividend was paid to the depositors and one-half of the account mentioned was paid and was credited on the bank guaranty certificate held by the receiver of the insurance company. The receiver had instituted suit against the superintendent of banks for the balance of the deposit to the credit of the insurance company, as shown by the books of the bank, and that suit was pending at the time the judgment was rendered.

The chancellor rendered judgment against Oubre, Cadenhead, and the National Casualty Company, jointly, in the sum of nine thousand two hundred fifty dollars and eighty cents, with six per cent interest from the date of the filing of the bill and all costs. From this judgment the National Casualty Company appeals, but the defendants, Cadenhead and Oubre, do not appeal.

It is insisted by the appellant that the chancery court did not have jurisdiction to render the judgment which

it rendered in this case, and that the bill filed was multifarious. A demurrer on general and special grounds was filed to the bill and overruled by the chancellor, after which answers were made by the respective defendants. It will appear from what has been stated that the demand all grew out of a common source, and that Oubre and Cadenhead had entered into a partnership arrangement, and through their connivance and collusion and fraud moneys properly belonging to the insurance company were diverted from that company to Cadenhead and Oubre. The bonds were all made by the same surety, and the acts of Oubre and Cadenhead were made under a secret contract between them amounting to a secret partnership in the funds so unlawfully diverted from the insurance company to the said Cadenhead and Oubre. Oubre deposited moneys belonging to the insurance company in a bank which he knew was insolvent and paid out to Cadenhead moneys fraudulently, of which he received a part, under their arrangement.

We think that Oubre and Cadenhead were jointly and severally liable for each act of wrongful conversion and fraud, and that the surety bond was liable under its terms for the acts of each on each of the said respective bonds. It is immaterial that the chancellor did not allocate the amount to be recovered from each bond, because the same surety made all of the bonds, and the judgment rendered by the chancellor subrogated the surety to the rights of the Mississippi Life & Casualty Insurance Company against both Oubre and Cadenhead, and also subrogated the insurance company to the rights of the receiver in the suit filed against the superintendent of banks, having the bank of Kemper in liquidation. As we see it, the National Casualty Company was liable on each of the bonds to the receiver of the Mississippi Life & Casualty Insurance Company, which receiver had a right to collect on all of the bonds for all of the parties in interest, and who will pay out the funds under the direction of the chancery

court, and that the appellant, on paying the judgment rendered against it, is acquitted of any further responsibility as it has no particular interest in the disbursement of these funds. It must be presumed that the funds will be paid out·under the direction of the court to the parties properly entitled thereto.

We find no grounds warranting a reversal of the judgment, and the judgment of the court below is affirmed. Affirmed.